USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3 3 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

ROBERT POINDEXTER,

                Plaintiff,                    13 Civ. 1155

   -against-                            <u>OPINION</u>

CASH MONEY RECORDS,

                Defendant.

----------------------------------------X

A P P E A R A N C E S:

      **PRO SE**

      ROBERT POINDEXTER
      153-27 120 Avenue
      Jamaica, NY 11434


      **ATTORNEYS FOR DEFENDANT**

      SHAPIRO, ARATO & ISSERLES LLP
      500 Fifth Avenue, 40th Floor
      New York, NY 1010
      By:  Cynthia S. Arato, Esq.
           James Darrow, Esq.

**Sweet, D.J.**

Defendant Cash Money Records ("Cash Money" or the "Defendant") has moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint of pro se plaintiff Robert Poindexter ("Poindexter" or the "Plaintiff") and pursuant to Fed. R. Civ. P. 56 for summary judgment. Upon the facts and conclusions set forth below, the motions are granted.

**Prior Proceedings**

The Plaintiff filed his complaint on February 20, 2013 ("Complaint") alleging that a sound recording and the underlying musical composition that he, respectively, co-produced and co-wrote were sampled without authorization in a recording by an artist known as Bow Wow released by the Defendant.

The Complaint alleges that the Plaintiff is a songwriter and music producer and the Defendant, Cash Money, "is in the business of recording, selling and distributing [p]honograph [r]ecords." (Compl. ¶ 2). The Complaint concerns a recording titled "Still Ballin," contained on an alleged "album" titled "Green Light 3," by the artist Shad Gregory Moss,

1

professionally known as Bow Wow. It alleges that "Still Ballin"
contains an unauthorized sample of a musical composition and
sound recording titled "Love Gonna Pack Up and Walk Out (Love
Gonna Pack Up)," which infringes Plaintiff's alleged rights in
these works.

The Complaint alleges that Poindexter co-wrote the
musical composition "Love Gonna Pack Up," and co-produced a
"classic" recording of that work in 1972, performed by the
recording group The Persuaders. (Id. ¶¶ 4-5). The Complaint
notes that he is "not now the copyright owner" of "Love Gonna
Pack Up," (id. ¶ 10), but that "a written agreement exists with
the copyright owner Warner/Chappell[Music]" – a music publishing
company – "granting [Poindexter] the right to personally file
such a complaint as this," (id.). The Complaint alleges a "right
to likewise bring this action for the Sound recording (or
master), as well as the composition" of "Love Gonna Pack Up"
under the Copyright Act and the United States Constitution.
(Id.).

Cash Money is alleged to have released the recording
in dispute. (See, e.g., id. ¶ 4 (alleging that "Cash Money
sampled" "Love Gonna Pack Up" "into it's [sic] ... recording

'Still Ballin'"); id. ¶ 6 (that '[t]he illegal usage is that Cash Money did not acquire authorization, to use the legal version"); id. ¶ 7 (alleging that "Cash Money infringed the copyright ... by distributing" the work for free "to the general public on internet downloads"); id. WHERETOFORE clause (seeking damages "since the date of the first illegal use herein by Cash Money")).

The instant motions were marked fully submitted on October 16, 2013.

**The Facts**

The facts are set forth in the Defendant's Statement of Undisputed Facts and the Affirmation in Opposition to the Motion and are undisputed except as noted.

The Plaintiff is a songwriter and music producer and Cash Money "is in the business of recording, selling and distributing [p]honograph [r]ecords."

3

The Complaint concerns a recording titled "Still Ballin," contained on an album titled "Green Light 3," by the artist Shad Gregory Moss, professionally known as Bow Wow.

The Complaint alleges that "Still Ballin" contains an unauthorized sample of a musical composition and sound recording titled "Love Gonna Pack Up and Walk Out (Love Gonna Pack Up)," thereby infringing Plaintiff's alleged copyrights in those allegedly sampled works and that Cash Money released and/or distributed "Still Ballin" on the Internet and that "Still Ballin" is Cash Money's recording. (Compl. ¶¶ 4, 6-7).

According to Bow Wow, Cash Money was not involved with and did not participate in the creation, recording, production, release, or distribution of "Green Light 3" or "Still Ballin" and Bow Wow released "Green Light 3" and its recording "Still Ballin" on his own. Before Plaintiff complained of the alleged infringement, Bow Wow never notified or otherwise communicated with Cash Money about "Green Light 3" or "Still Ballin," and no one did so on his behalf.

A copy of Cash Money's logo appears on certain representations of the "cover" of "Green Light 3," as released

4

by Bow Wow on the Internet, but Cash Money had nothing to do
with, and did not authorize, placing this logo on the cover.


**The Applicable Standards**


On a motion to dismiss pursuant to Rule 12(b)(6), all
factual allegations in the complaint are accepted as true, and
all inferences are drawn in favor of the pleader. Mills v. Polar
Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). "'The issue
is not whether a plaintiff will ultimately prevail but whether
the claimant is entitled to offer evidence to support the claims
. . . .'" Villager Pond, Inc. v. Town of Darien, 56 F.3d 375,
378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232,
236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).


To survive a motion to dismiss pursuant to Rule
12(b)(6), "a complaint must contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible
on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct.
1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929
(2007)). Plaintiffs must allege sufficient facts to "nudge[ ]
their claims across the line from conceivable to plausible."

5

Twombly, 550 U.S. at 570. Though the Court must accept the
factual allegations of a complaint as true, it is "'not bound to
accept as true a legal conclusion couched as a factual
allegation.'" Iqbal, 129 S. Ct. at 1950 (quoting Twombly, 550
U.S. at 555).

## The 12(b)(6) Motion Is Granted

        Approximately 22 months ago, in Poindexter v. EMI
Record Group Inc., No. 11 Civ. 559(LTS)(JLC), 2012 WL 1027639
(S.D.N.Y. Mar. 27, 2012), the Honorable Laura Taylor Swain
dismissed a copyright infringement claim brought by Plaintiff
against EMI Record Group Inc. Judge Swain held in EMI that
Plaintiff was not an owner of a set of sound recordings —
including the sound recording at issue in this case — and thus
lacked standing to sue EMI for alleged copyright infringement of
one of those works. Id. at *3. Judge Swain's decision bars
Poindexter from re-litigating his lack of standing.

        Collateral estoppel bars a party from re-litigating in
a second proceeding an issue that was decided against him in a
prior proceeding. See Allen v. McCurry, 449 U.S. 90, 94 (1980)
("once a court has decided an issue of fact or law necessary to

its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."). A prior adverse ruling will have collateral estoppel effect in a subsequent action when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006) (quoting Purdy v. Zeldes, 337 F.3d 253, 258 & n.5 (2d Cir. 2003)).

Even though a plaintiff's factual allegations must be accepted as true and all reasonable inferences drawn in the plaintiff's favor on a motion to dismiss, collateral estoppel will nonetheless bar a plaintiff's claim when the plaintiff's "factual allegations have been decided otherwise in previous litigation." Jacobs v. Law Offices of Leonard N. Flamm, No. 04 Civ. 7607, 2005 WL 1844642, at *3 (S.D.N.Y. July 29, 2005); see also Linden Airport Mgmt. Corp. v. N.Y.C. Econ. Dev. Corp., No. 08 Civ. 3810(RJS), 2011 WL 2226625, at *3 (S.D.N.Y. June 1, 2011) ("[I]t is well settled that a court may dismiss a claim on

7

res judicata or collateral estoppel grounds on a Rule 12(b)(6)
motion." (quoting Sassower v. Abrams, 833 F. Supp. 253, 264 n.18
(S.D.N.Y. 1993)). In that event, "a court may take judicial
notice of those proceedings and find that plaintiff[] [is]
estopped from re-alleging those facts." Jacobs, 2005 WL 1844642,
at *3; see also Linden Airport, 2011 WL 2226625, at *3
(dismissal under Rule 12(b)(6) on collateral estoppel grounds
appropriate where "it is clear from the face of the complaint,
and consideration of matters which the court may take judicial
notice of, that the plaintiff's claims are barred as a matter of
law" (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d
Cir. 2000)).


        Collateral estoppel effect has been given to prior
determinations that a plaintiff is not a valid copyright owner
and, thus, lacks standing to sue for infringement. See, e.g.,
Akhenaten v. Najee, LLC, 544 F. Supp. 2d 320, 331-33 (S.D.N.Y.
2008) (collateral estoppel effect given to prior decision that,
inter alia, plaintiff did not establish he had rights in the
intellectual property at issue); Whimsicality, Inc. v. Battat,
27 F. Supp. 2d 456, 463 (S.D.N.Y. 1998) (collateral estoppel
effect given to prior decision that plaintiff had no valid
copyright).

8

As he does here, Plaintiff alleged in EMI that the defendant record label had released a recording that "sampled" a different recording that Plaintiff had co-produced and over which he allegedly enjoyed a right to sue. See EMI, 2012 WL 1027639, at *1. Judge Swain found that Plaintiff lacked standing to sue for infringement of his alleged recording, based on the terms of a 1998 agreement between Plaintiff and his co-producers, on the one hand, and Atlantic Recording Corporation, on the other (the "1998 Agreement"), which Plaintiff had attached to his initial pleading in the case. Id. at *1, *3; (see also Declaration of James Darrow, Aug. 23, 2013 ("Darrow Decl."), Ex. 1, at 6-9).

Judge Swain found that the 1998 Agreement governs the ownership of ten sound recordings ("Masters"), co-produced by Plaintiff and others and identified on the agreement's attached Exhibit "A." See EMI, 2012 WL 1027639, at *1, *3; (Darrow Decl., Ex. 1 at 9). One of those Masters (recording number one on the exhibit) was titled "Thin Line Between Love and Hate," (Darrow Decl., Ex. 1 at 9), and was the recording at issue in EMI. See EMI, 2012 WL 1027639, at *1. Another of the Masters (recording

9

number six) is the recording at issue here. (Darrow Decl., Ex. 1 at 9 (listing "Love Gonna Pack [U]p")).

As Judge Swain observed in EMI, the 1998 Agreement states that

> the Masters (together with all reproductions derived therefrom and performances embodied thereon), from the inception of the recording thereof, shall be [Atlantic's] property in perpetuity throughout the world free from any claims whatsoever by you [i.e., Poindexter], and [Atlantic] shall have the exclusive right throughout the world to copyright the Masters in our name as the author and owner of them . . . . Each Master shall be considered a "work made for hire" for us . . . .

2012 WL 1027639, at *1; (Darrow Decl. Ex. 1 at 6). In light of these express terms, Judge Swain concluded that the 1998 Agreement "foreclose[s] Plaintiff's argument that he ever had ownership rights in the masters," id. at *3, held that Plaintiff lacked standing to sue for infringement of the recording at issue in EMI and dismissed Plaintiff's claim that this recording had been infringed, id. at *3, *5.

Plaintiff necessarily raised the issue of his ownership of the recordings governed by the 1998 Agreement when he sued EMI for copyright infringement regarding one of these

10

works. See Wolk v. Kodak Imaging Network, 840 F. Supp. 2d 724, 741 (S.D.N.Y. 2012) ("To establish a claim of copyright infringement, a plaintiff must establish," inter alia, "ownership of a valid copyright").

Plaintiff's lack of ownership of the works governed by the 1998 Agreement was actually litigated and decided in the previous proceeding: Judge Swain expressly found Plaintiff's "argument that he ever had ownership rights in the masters" to be "foreclose[d]" by the 1998 Agreement and applicable law. EMI, 2012 WL 1027639, at *3. Although EMI concerned Plaintiff's alleged rights to the "Thin Line Between Love and Hate" recording, Judge Swain's determination bars Plaintiff from re-litigating the ownership issue with respect to the "Love Gonna Pack Up" recording as well, given that both recordings are governed by the same 1998 Agreement on which Judge Swain's determination is based. See Galin v. United States, No. 08-CV-2508(JFB)(ETB), 2008 WL 5378387, *7 (E.D.N.Y. Dec. 23, 2008) (applying collateral estoppel to preclude plaintiff's ownership claim in light of prior determination where, "[a]lthough the case before this Court involves a different property from that at issue before the [prior court]," the claimed ownership rights in both proceedings were based on "identical" facts).

11

Because Plaintiff's ownership of his recording was a necessary element of his infringement claim in EMI, see Wolk, 840 F. Supp. 2d at 741, the resolution of the ownership issue was necessary to support Judge Swain's valid and final judgment on the merits.

Judge Swain's dismissal in EMI constitutes a final and binding judgment that Plaintiff does not have standing to sue for infringement of the recordings governed by the 1998 Agreement. In light of this prior judgment, Plaintiff lacks standing to sue for infringement of the "Love Gonna Pack Up" recording based on this work. Although Plaintiff's Complaint alleges that he has "a written agreement with the copyright owner Warner/Chappell granting [him] the right to personally file such a complaint as this," (Compl. ¶ 10), Warner/Chappell's agreement with Plaintiff is a publishing agreement concerning Plaintiff's rights in and to various musical compositions, EMI, 2012 WL 1027639, at *3. This publishing agreement does not purport to grant him the right to sue for infringement of a sound recording, and Judge Swain previously rejected this same allegation in EMI. See id. ("Even if the Court were to assume (1) that this clause contemplated suits for infringement of the

12

master as well as the sound recording copyright, and (2) that
Warner/Chappell Music owned the master, the clause could not
confer standing on Plaintiff to bring suit.").

Plaintiff has sought to avoid collateral estoppel
because, he asserts, "the sound recording issue is not the same
in this case as in EMI." (Memorandum Of Law In Opposition To
Defendant's Motion To Dismiss The Complaint And For Summary
Judgment ("Pl. Br.") at 6); see Ball v. A.O. Smith Corp., 451
F.3d 66, 69 (2d Cir. 2006) (first element of collateral estoppel
requires that "the identical issue was raised in a previous
proceeding").[1] Plaintiff has asserted that the EMI decision
foreclosed only his "right to sue for reasons of copyright
ownership," whereas "the sound recording issue in this case is
based on royalty rights." (Pl. Br. 6).

Plaintiff appears to rely on Section 501(b) of the
Copyright Act, which recognizes that either "legal" or
"beneficial" owners of an exclusive right under a copyright may
sue for infringement. See 17 U.S.C. § 501(b) (providing that

---

[1]  Plaintiff grants that "the resolution of sound recording ownership may
have been a substantial element of my infringement claim," "agree[s] that I
did have a full and fair opportunity to litigate the issue in EMI," and
concedes that the issue was an element (but "not the only element")
"necessary in Judge Swain's final and binding judgment regarding the right to
sue" in that case. (Pl's Br. 8).

"the legal or beneficial owner of an exclusive right under a
copyright is entitled . . . to institute an action for any
infringement of that particular right committed while he or she
is the owner of it"). Under that provision, a legal owner can be
anyone who holds title to that exclusive right, see 17 U.S.C.
§ 201(d), whereas beneficial owners are limited to the original
author who transfer such title to another, but who are entitled
to receive royalties from that new owner for the exploitation of
the author's work, see, e.g., Harris v. Simon & Schuster, Inc.,
646 F. Supp. 2d 622, 632 (S.D.N.Y. 2009) (holding that party who
"granted . . . limited rights in the Work in exchange for the
payment of royalties . . . qualifies as a 'beneficial owner'"
for copyright purposes). Plaintiff appears to contend that EMI
held only that he lacked standing to sue for infringement as a
"legal" owner of the copyrights, and did not address Plaintiff's
standing to sue based on his being a "beneficial" owner. (See
Pl.'s Br. 5 (claiming a right to a "beneficial royalty
ownership/interest"); id. at 1, 3 (same); Compl. ¶ 6 (same)).

    However, Judge Swain found in EMI that Plaintiff was a
party to a 1998 agreement (the "1998 Agreement") with Atlantic
Recording Corporation concerning the ownership of ten sound
recordings co-produced by Plaintiff, including "Love Gonna Pack

14

Up" (the "Masters") and further found that the 1998 Agreement established that Atlantic was the work-for-hire owner of the Masters and that the agreement, accordingly, "foreclose[d] Plaintiff's argument that he ever had ownership rights in the [M]asters." EMI, 2012 WL 1027639, at *1-*3. In so holding, Judge Swain considered and rejected the argument Plaintiff has advanced here, namely, that "his continued entitlement to royalties makes him a beneficial owner" of the Masters. Id. at *3. As Judge Swain explained, "[e]very circuit to consider the issue has held that the creator of a work for hire [as the Masters are under the 1998 Agreement] who receives royalties does not qualify as a beneficial owner." Id. Accordingly, Judge Swain's controlling judgment in EMI was that "Plaintiff is not an owner, beneficial or otherwise," of the Masters. Id. at *2. That issue is presented here, and under settled principles of collateral estoppel Plaintiff may not relitigate it. (See Def. Br. 7-9). The Plaintiff lacks standing to bring a claim for infringement based upon the sound recording "Love Gonna Pack Up."

Also, the Plaintiff attempts to distinguish EMI on the ground that even after that decision he retains a "right to sue for failure to pay production royalties" sounding in "breach of

15

contract." (Pl. Br. 7). Plaintiff asserts that this putative
claim relates to the alleged "royalty rights granted me in the
1998 agreement," which purportedly "obligates" Cash Money "to
pay [Plaintiff] production royalties for "Love Gonna Pack U[p]."
(Pl. Br. 8). However, Cash Money is not a party to the 1998
Agreement. Only Poindexter, his coproducers, and Atlantic
entered into this contract. (See Declaration of James Darrow,
sworn to Aug. 23, 2013 ("Darrow Decl."), Ex. 1 p. 8 (Compl. Ex.
I at 3)). Consequently, "[i]n general, if an entity is not a
party to a contract, no valid breach of contract claim exists
against that entity." Hotel Aquarius B.V. v. PRT Corp., No. 92
Civ. 4498 (MBM), 1992 WL 391264, at *6 (S.D.N.Y. Dec. 22, 1992)
(granting motion to dismiss breach of contract claim against
nonparty to contract); see also Inter Impex S.A.E. v. Comtrade
Corp., No. 00 Civ. 0133(GBD), 2004 WL 2793213, at *4 (S.D.N.Y.
Dec. 6, 2004) ("Without a contractual relationship, there can be
no alleged breach."). Plaintiff's effort to convert his barred
infringement claim into a breach of contract claim therefore
fails.


Plaintiff observes that Cash Money cannot use EMI to
preclude his claim for infringement based upon the musical
composition underlying "Love Gonna Pack Up." (See Pl. Br. 1 (EMI

16

"did not deny my rights in the composition")). Poindexter has
asserted that "Judge Swain['s] Judgment saying that I have a
valid copyright in the composition" is "indisputable evidence"
of one "essential element[]" of his claim. (Pl. Br. 10-11).
However, EMI says nothing at all about the musical composition
underlying "Love Gonna Pack Up," and merely "assume[d]" a valid
copyright and a copying in the irrelevant composition at issue
in order to dismiss Plaintiff's claim on other grounds. 2012 WL
1027639, at *4. In addition, Poindexter cannot use EMI
affirmatively in this case, because Cash Money was not a
defendant in the prior proceedings. See Parklane Hosiery Co.,
Inc. v. Shore, 439 U.S. 322, 326 n.4 (1979) (explaining contours
of offensive collateral estoppel). Cash Money does not contend
otherwise.

   Given the reasoning above, Plaintiff is collaterally
estopped for lack of standing, and Defendant's motion to dismiss
is granted.

**The Motion For Summary Judgment Dismissing The Complaint Is Granted**

   As the Second Circuit has explained, while pro se
pleadings are read "liberally" and interpreted " to raise the
strongest arguments that they suggest," a court's "application

17

of this different standard does not relieve plaintiff of his
duty to meet the requirements necessary to defeat a motion for
summary judgment." Jorgensen v. Epic/Sony Records, 351 F.3d 46,
50 (2d Cir. 2003) (citation omitted).

        Although Plaintiff has alleged that Cash Money
purportedly released the recording in dispute, the evidence
submitted establishes that Cash Money had no involvement in this
work. A defendant cannot be directly liable for copyright
infringement when it did not participate in the allegedly
infringing acts. As this Court has explained, "[d]irect
liability" for copyright infringement "requires 'volitional
conduct' that 'causes' the infringement." Wolk, 840 F. Supp. 2d
at 742 (citing Cartoon Network LP v. CSC Holdings, Inc., 536
F.3d 121, 130-31 (2d Cir. 2008). Where "the Plaintiff has failed
to establish any volitional conduct," a copyright infringement
defendant "[is] not liable for direct infringement," and summary
judgment should be granted in favor of the defendant. Id. at
743; see also Zappa v. Rykodisc, Inc., 819 F. Supp. 2d 307, 316
(S.D.N.Y. 2011) ("Here, there is no evidence establishing direct
liability, since ZFT cannot point to volitional conduct by Ryko
that caused the distribution. Rather, Apple, not Ryko,
distributed these tracks."). The Second Circuit has stressed

18

that evidence of the defendant's "volitional conduct" is "an important element of direct liability." Cartoon Network, 536 F.3d at 131.

Accordingly, where a plaintiff has established a defendant's involvement in the allegedly infringing conduct, summary judgment must be awarded in the defendant's favor. See, e.g., Lessem v. Taylor, 766 F. Supp. 2d 504, 514 (S.D.N.Y. 2011) (granting summary judgment where "plaintiffs have produced no evidence whatsoever that [defendant record companies] had anything to do with the copyright infringement alleged in this case"); Faulkner v. Nat'l Geo. Soc'y, 211 F. Supp. 2d 450, 472 (S.D.N.Y. 2002) (where plaintiffs "have brought forward absolutely no evidence suggesting that Kodak itself engaged in conduct that violated any of the exclusive rights granted to copyright holders . . . plaintiffs cannot hold Kodak liable as a direct infringer as a matter of law"), modified on other grounds, 220 F. Supp.2d 237, aff'd sub nom. Faulkner v. Nat'l Geo. Enters. Inc., 409 F.3d 26 (2d Cir. 2005); Pickwick Music Corp. v. Record Prods., Inc., 292 F. Supp. 39, 41 (S.D.N.Y. 1968) (granting summary judgment in favor of individual defendants where defendant's evidence showed they "did not participate in [corporate defendant's] copyright infringement").

19

Plaintiff has not presented any evidence that Cash Money undertook any conduct including the requisite "volitional conduct" with respect to the allegedly infringing work. As set forth in the declaration of Bow Wow, it was Bow Wow, and not Cash Money, who created, self-released and self-distributed "Green Light 3" and its recording "Still Ballin.'" (See Declaration of Shad Gregory Moss p/k/a "Bow Wow," sworn to March 2013 ("Moss Decl."), at ¶ 3 ("I self-released . . . a mixtape entitled 'Green Light 3,' which included the track 'Still Ballin.'")). This sworn testimony establishes that Cash Money engaged in no conduct whatsoever with respect to "Still Ballin,'" volitional or otherwise, and Plaintiff has not presented any substantial evidence or facts of Cash Money's involvement. Defendant thus cannot be liable for any allegedly infringing material contained in that work.

Bow Wow did improperly affix a small copy of Cash Money's logo to certain representations of Green Light 3's "cover" on the Internet. (See Moss Decl. ¶ 5; Defendant's 56.1 Statement ¶ 11). For example, the logo can be discerned in the screenshot attached as Exhibit A to the Complaint. But even viewed in the light most favorable to Plaintiff, the presence of

this logo fails to establish Cash Money's volitional
participation in creating or releasing the allegedly infringing
work, because Bow Wow has stated that "Cash Money had nothing to
do with, and did not authorize, placing this logo on the
mixtape's cover." (Id.). The logo, by itself, is insufficient to
establish Cash Money's participation in the creation or release
of the work. See Brown v. Henderson, 257 F.3d 246, 252 (2d Cir.
2001) (to defeat a motion for summary judgment, plaintiff "must
come forth with evidence sufficient to allow a reasonable jury
to find in [his] favor").

Plaintiff "maintain[s] that Cash Money was
substantially involved" in the alleged infringement because "the
recording in dispute [i.e., the artist Bow Wow's track "Still
Ballin,'" on the mixtape "Green Light 3"] was released on the
Cash Money label."(Pl. Br. 11). As "evidence" for this
proposition, Plaintiff points to the fact that Bow Wow is signed
to a recording agreement with Cash Money, and certain
unauthenticated screenshots of Green Light 3's "cover" with what
appears to be Cash Money's logo affixed. (See id. at 1, 4, 13;
Compl. Ex. A, B; Poindexter Affirmation, dated Sept. 27, 3013
[sic] ("Poindexter Aff."), Ex. A at 1). However, Bow Wow states,
under penalty of perjury, that he created, self-released, and

21

self-distributed "Still Ballin"; that Cash Money was not
involved or notified about the work; and that he affixed the
Cash Money logo on the mixtape's cover without Cash Money's
authorization or involvement. (Def. Br. 11-13; Declaration of
Shad Gregory Moss p/k/a "Bow Wow," sworn on March 2013 ("Moss
Decl.") ¶¶ 3-5).

Plaintiff insists that Bow Wow's declaration "is not
credible or legal" because the producer of the allegedly
infringing musical bed underlying "Still Ballin," a person who
Bow Wow identifies as Crack Beatz, (Moss Decl. ¶ 6), has not had
"the opportunity to defend himself in a court of law," (Pl. Br.
12; see also id. at 13 ("[T]here are no documents . . . showing
if producer Crack Beatz admits to, or denies the accusations
made against him . . . .")).

Plaintiff's allegation that Crack Beatz might dispute
Bow Wow's account is insufficient to create a genuine issue of
fact as to the credibility of Bow Wow's sworn testimony. See
Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996)
("[C]onclusory statements, conjecture, or speculation by the
party resisting the motion will not defeat summary judgment.");
Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18

22

(2d Cir. 1995) (summary judgment motion "will not be defeated

merely . . . on the basis of conjecture or surmise" (citing

Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991)). Rather,

Plaintiff bears the burden to produce "affirmative evidence

warranting an adverse inference" to controvert Bow Wow's

declaration. Island Software & Computer Serv., Inc. v. Microsoft

Corp., 413 F.3d 257, 262 (2d Cir. 2005).


      Poindexter purports to identify "conflicting

statements" in Bow Wow's declaration. In particular, Plaintiff

compares Cash Money's (accurate) statement in its opening brief

that "it was Bow Wow, and not Cash Money, who created, self-

released and self-distributed "Green Light 3" and its recording

"Still Ballin" (Def. Br. 11-12) with Bow Wow's statement in his

declaration that Crack Beatz "created the underlying musical bed

for, and produced, Still Ballin" (Moss Decl. ¶ 6). (See Pl. Br.

12-13). These statements, however, do not conflict but describe

a music production arrangement, whereby Crack Beatz supplied the

underlying music for and produced the track, and Bow Wow rapped

his lyrics over that music to create, and then release, the

final track. (Moss Decl. ¶¶ 3, 6); see also Note, What's In A

Song? Copyright's Unfair Treatment Of Record Producers And Side

Musicians, 61 Vand. L Rev. 1235, 1237 (2008) (observing that

"[r]ecord producers often create or influence the instrumental parts played by recording artists, and . . . implement sound manipulation techniques in the recording studio that give a recorded composition its unique character").

Poindexter also contends that Cash Money's opening brief "contradicts" Bow Wow's declaration because "Bow Wow denied that he was totally responsible for the infringement as Cash Money said." (Pl. Br. 12-13). Cash Money summarized Bow Wow's own testimony that he, not Cash Money, created, distributed and released "Green Light 3" and the recording "Still Ballin." (Def. Br. 11-12). There are no inconsistencies in Bow Wow's declaration.

Plaintiff also asserts that Bow Wow declaration is not credible because it "lacks proven evidence in support [of] the credibility of it." (Pl. Br. 11). However, Cash Money is not required to bolster its own witness's testimony with additional corroborating evidence. Rather, it is Poindexter's burden to produce "specific facts" that put the witness's "credibility in issue so as to preclude summary judgment." Charles Alan Wright et al., 10A Fed. Prac. & Proc. Civ. § 2726 (3d ed. April 2013). Plaintiff has submitted only his "[u]nsupported allegations that

24

credibility is in issue," which "will not suffice." Id.; see also Crawford-El v. Britton, 523 U.S. 574, 600 (1998) (holding that "if the [defendant] has made a properly supported [summary judgment] motion, the plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden" (footnote omitted)); McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 280 (2d Cir.1999) (plaintiff does not create an issue of fact merely by "impugning [a witness'] honesty"); Zito v. Fried, Frank, Harris, Shriver & Jacobson, LLP, 869 F. Supp. 2d 378, 391 (S.D.N.Y. 2012) ("Neither conclusory assertions, nor contentions that the affidavits supporting the motion are not credible, create a genuine issue of material fact." (citations omitted)). Because Poindexter points to no "specific facts" putting the credibility of Bow Wow's declaration in issue, he cannot withstand summary judgment.

Plaintiff's opposition has failed to create a genuine issue of fact as to Cash Money's involvement with the alleged infringement. Plaintiff asserted in his brief that the sound recording "was release[d] and exploited in all manners on the Cash Money label." (Pl. Br. 4). This is unsupported by the

25

record, and Plaintiff's own Complaint mentions only exploitation
through "alleged free downloads" on the Internet. (Compl. ¶ 4;
id. ¶ 7 (mentioning only distribution "on internet downloads")).
Plaintiff's assertion that "['Still Ballin'] was willfully
allowed to be exploited by Cash Money (and still is)," (Pl. Br.
11), is also unsupported.

Plaintiff has attached various unauthenticated
documents to his unsigned affirmation. (Poindexter Aff. at 1-2).
For example, Exhibit A to the affirmation contains what he
claims are covers of three Bow Wow mixtapes, Green Light 3, 4
and 5, which appear to have been posted (by anonymous sources)
with what looks like Cash Money logos. (See Pl. Br. 3 (alleging
that the Green Light mixtapes are "a series of albums . . . all
released on the Cash Money Record label")). But the Green Light
3 cover adds nothing to the record, and Green Light 4 and 5 have
nothing to do with Plaintiff's claim. The presence of Cash
Money's logo is insufficient to establish that Cash Money
released that work. Cash Money has submitted an additional
declaration, evidencing that Cash Money had nothing to do with
any album in Bow Wow's Greenlight series. (See Declaration of
Shad Gregory Moss, October 11, 2013, at ¶¶ 2-5). Plaintiff's
unauthenticated screenshots fail to create a genuine issue of

26

fact as to Cash Money's involvement with "Still Ballin," and do not withstand summary judgment.

The press reports attached as Exhibit E to the effect that Cash Money was sued regarding other works that it did, in fact, release, do not prove that Cash Money released the album in question here.

Given the evidence shows the named Defendant in this action had no involvement with the alleged infringement, Defendant's motion for summary judgment is granted.

**Conclusion**

Given the reasoning above, Defendant's motion to dismiss and motion for summary judgment is granted in favor of Cash Money.

**New York, NY**
**February 2 5 , 2014**

_____
**ROBERT W. SWEET**

27